IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH ALEXANDER COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-06-1115-F |
| v. | ) | |
| | ) | |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. When he filed his Complaint on October 12, 2006, Plaintiff was in custody at the Davis Correctional Facility ("DCF"), Holdenville, Oklahoma, a private prison under contract with the Oklahoma Department of Corrections ("ODOC") to house Oklahoma prisoners. Plaintiff recently filed a notice of change of address indicating that he is now in custody at the state-operated John H. Lilley Correctional Center ("JLCC"), Boley, Oklahoma. Named as Defendants in the Complaint are: ODOC Director Jones, Corrections Corporation of America("CCA"), CCA President John Ferguson, CCA Regional Director Steven Kaiser, ODOC Medical Services Administrator Dennis Cotner, Cimarron Correctional Facility ("CCF")[1] Warden T. Peterson, CCF Assistant

---

[1]CCF is a private prison operating under a contract with the ODOC to house Oklahoma prisoners.

Warden Renee Watkins, CCF Health Services Administrator Robin Roof, and CCF Physician's Assistant ("PA") Torbati.

Plaintiff was in custody at CCF from February 1, 2006 until August 8, 2006, when he was transferred to DCF. He remained at DCF until his recent transfer to JHCC. In his Complaint, Plaintiff alleges that he injured his hip prior to his present incarceration which began in January 2006. Plaintiff asserts that Defendant Jones and Defendant Cotner were obligated to alert CCF medical staff of Plaintiff's "pre-existing medical condition" which he contends was described in "my old medical field file." He alleges that Defendant Torbati, a CCF physician's assistant, denied him "all medical attention" including x-rays of his hip. Plaintiff asserts that his "broken hip ... has been confirmed by several doctors," that Defendants Roof and Watkins, who are employed by CCF, "refused to give [him] a cain [sic] to help [him] walk or any pain medican [sic] other that [sic] Ibuprophen which is ... not [for] someone suffuring [sic] with a broken hip and a rod protruding out the top of [his] hip," that while Plaintiff was confined to CCF's segregation unit for fifteen days Defendant Roof "refused to answer" a request that she "notify Sgt. Miller of my medical condition," that he was "forced to walk or limp on my broken hip for 6 months," that he is "entitled to surgery to fixes [sic] my hip to relieve the pain," and that he is "entitled to Monetary relief for the pain and suffering [he has] endured for the last six months."

Defendants Jones and Cotner have moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56(b). Defendants Jones and Cotner assert that Plaintiff has failed to establish an

affirmative link between these Defendants and the unconstitutional acts alleged in Plaintiff's Complaint. Defendants Jones and Cotner further assert that Plaintiff has failed to state a claim of deliberate indifference to his serious medical needs with respect to the Defendants and that Plaintiff's allegation of a violation of Oklahoma's Constitution fails to state a claim under 42 U.S.C. § 1983. Finally, Defendants Jones and Cotner assert that they are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities, and they are entitled to immunity under the Eleventh Amendment with respect to Plaintiff's claims against them in their official capacities.

Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof have separately moved to dismiss the cause of action against them. Pursuant to 42 U.S.C. § 1997e(a), these Defendants assert that Plaintiff failed to demonstrate his exhaustion of administrative remedies. Defendants Ferguson, Kaiser, Peterson, and Watkins move to dismiss the cause of action against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

Plaintiff has responded to the Defendants' Motions, and the matter is at issue on the pleadings. Defendant Torbati has not been served, nor has he answered the Complaint. ODOC has filed a special report consistent with <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978)(Doc. # 29), and CCF has filed a special report consistent with <u>Martinez</u> (Doc. # 32) as well.

I. <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act of 1995 ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378, 2382-2383 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). "[F]ailure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). The PLRA's administrative exhaustion requirement is satisfied if the inmate complies with the prison's grievance procedures, and "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Id. at 922-923. Moreover, the PLRA does not impose a "total exhaustion rule," and courts may therefore proceed with exhausted claims while dismissing claims that have not been exhausted. Id. at 923-926.

Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof assert that Plaintiff failed to exhaust administrative remedies concerning the claims as described by Defendants "that because of 'retaliation' he was assaulted by another inmate" and that "the conditions of his confinement were unconstitutional for the several weeks he was in segregation for fighting."

Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof Motion to Dismiss and Brief in Support, at 8-9. In Plaintiff's response to the Defendants' dispositive Motions, Plaintiff clarifies his claims. With respect to Defendants' assertion of a failure to exhaust administrative remedies concerning a "retaliation claim," Plaintiff states: "[a]s for me failing ... to file grievances regarding retaliation or time spent in segregation at [CCF], I never [alleged] that I was assaulted out of retaliation over filing a grievance or civil rights violation. I was, however assaulted over retaliation because an inmate had an altercation with an officer and he in turn assaulted me over being in an angry and agitated state of mind." Plaintiff's Response, at 5-6. In light of this clarification, Defendants' Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies concerning a "retaliation" claim should be denied as Plaintiff does not assert such a claim against any Defendant.

With respect to the Defendants' assertion of a failure to exhaust administrative remedies concerning a claim of unconstitutional conditions of confinement in segregation, Plaintiff clarifies in his Response that this claim is not a separate claim but represents a part of the claim asserted in his Complaint that Defendant Roof was deliberately indifferent to his serious needs during his confinement at CCF between February 1, 2006 and August 8, 2006. See Plaintiff's Response, at 6.

The record shows that Plaintiff submitted three Request to Staff forms dated February 3, 2006, March 9, 2006, and March 27, 2006. In his first two Request to Staff forms, Plaintiff requested medical treatment for a hip injury, including examination by a "real doctor," examination by an orthopedic specialist, pain medications, a lower bunk and lower run

5

restriction, an orthopedic mattress, and a cane. In his grievance directed to CCF Assistant Warden Watkins dated February 26, 2006, Plaintiff asserted that CCF medical personnel, including Defendants Torbati and Roof, had refused to provide him with appropriate medical treatment for his "pain" due to his hip condition. Plaintiff's Complaint, Ex. B. As relief, Plaintiff requested "proper medication," an "ortho [sic] mattress," a cane, and "to be seen by a ortho [sic] specialist." Id. This grievance was denied, although the response to the grievance indicates that Plaintiff's x-rays and medical records would be reviewed by an orthopedic specialist. Id. Plaintiff appealed the grievance decision, and Plaintiff received a response from ODOC Medical Services Administrative Cotner dated June 5, 2006, in which Plaintiff was advised that relief was denied. Specifically, the grievance response states:

> Pertinent information from your medical record was obtained and reviewed. According to your record, the facility's physician's assistant initiated an orthopedic consultation referral request on April 25, 2006. An orthopedic consultant at the OU Medical Center responded to the request on April 26. The orthopedist recommended daily stretching exercises to maintain flexibility in your hips and legs; however, he did not recommend surgery to remove the "nail" from your left femur.
> According to your record, the facility's physician's assistant transcribed an order for an anti-inflammatory/analgesic medication on February 6, to minimize the discomfort in your hip. In addition, he also recommended a "bottom bunk and run." However, he did not recommend, nor did he order, a cane or an "ortho mattress."
> If you need further assistance with any health concerns, you must submit a "Request for Medical Services" form (attached) to the medical unit at your facility, via the sick call process."

Plaintiff's Complaint, Ex. J. This grievance generally alleged a denial of proper medical treatment by Defendants Torbati and Roof for pain related to Plaintiff's hip injury during his

6

confinement at CCF.

Plaintiff submitted a separate "request to staff" form directed to Defendant Roof dated March 27, 2006, in which Plaintiff requested that Defendant Roof "give me a restriction [and] let Sgt. Miller know about my medical condition [so] he will allow me to cuff-up in front instead of behind my back [because] I can't get off the floor cuffed behind my back w[ith]out help." In response to this administrative request, Defendant Roof responded on April 11, 2006, that Plaintiff's request "[s]houldn't be a problem now you are out of seg[regation]." Plaintiff's Complaint, Ex. E.

In response to Defendants' Motion to Dismiss for failure to exhaust, Plaintiff clarifies that this incident is a part of his Eighth Amendment claim of deliberate indifference to his serious medical needs against Defendants rather than a unique claim of unconstitutional conditions of confinement during segregation. Accordingly, Plaintiff's grievance which Plaintiff pursued through the necessary steps of the CCF administrative grievance procedure, see Defendants Ferguson, Kaiser, Peterson, Watkins and Roof Motion to Dismiss, Ex. 1.1, was broad enough to demonstrate Plaintiff exhausted administrative remedies concerning his Eighth Amendment claim against Defendants. Therefore, Defendants' Motion to Dismiss for failure to comply with the PLRA's exhaustion requirement should be denied.

II. Personal Participation

Defendants Cotner, Jones, Ferguson, Kaiser, Peterson, and Watkins contend that Plaintiff has failed to state a claim under § 1983 against them because the Complaint fails to assert their participation in any of the alleged constitutional deprivations. "Dismissal of a

pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 806 (10th Cir. 1999). "In determining whether dismissal is proper, [the court] must accept the allegations of the complaint as true and ... construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." Id.

It is well established that "[a] supervisor is not liable under section 1983 unless an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)(internal quotations and alterations omitted). Moreover, "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). In other words, "for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006).

In Plaintiff's Complaint, he names Defendants Cotner, Jones, Ferguson, Kaiser, Peterson, and Watkins solely because of their supervisory capacities for ODOC and CCF. Plaintiff has failed to allege that Defendants Cotner, Jones, Ferguson, Kaiser, Peterson, or Watkins personally authorized, supervised, or participated in any decisions regarding Plaintiff's medical care, and Plaintiff has therefore failed to state a claim for relief under 42 U.S.C. § 1983 against these Defendants. See Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir.

1990)("Plaintiffs must show that a supervisory defendant, expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation.").

III. Eighth Amendment Deliberate Indifference to Serious Medical Needs

Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof move to dismiss Plaintiff's Eighth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hall v. Bellmon, 935 F.2d 1106, 1109(10th Cir. 1991).  In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's factual allegations to be true and construes them in the light most favorable to the plaintiff. Id.  A *pro se* plaintiff's complaint must be broadly construed under this standard. Haines v. Kerner, 404 U.S. 519, 520(1972).  However, the "broad reading" of *pro se* complaints dictated by Haines "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall, 935 F.2d at 1110.  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174(10th Cir. 1997).  In considering a civil complaint filed by an *in forma pauperis* litigant, the court must dismiss the *in forma pauperis* litigant's cause of action at any time the court determines the action is frivolous, malicious, fails to state a

claim upon which relief may be granted, or if the prisoner seeks monetary relief from a defendant who is immune from such a claim. 28 U.S.C. § 1915(e)(2)(B).[2]

Plaintiff alleges that Defendants Roof and Torbati failed to provide medical care and/or delayed providing him with necessary medical treatment for his hip injury, and that these omissions violated his Eighth Amendment rights. Plaintiff's Complaint; Plaintiff's Response, at 3-8. The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994)(quoting Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). See Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980)(states must provide their inmates with "reasonably adequate ventilation, sanitation, bedding, hygiene materials, and utilities (*i.e.*, hot and cold water, light, heat, and plumbing)"), cert. denied, 450 U.S. 1041 (1981). The Supreme Court's opinion in Farmer provides the framework for evaluating Plaintiff's claims.

To prevail on a claim of failure to provide medical care under the Eighth Amendment, an inmate must show he was "incarcerated under conditions posing a substantial risk of serious harm" and that the prison or jail officials were deliberately indifferent to the inmate's health or safety. Farmer, 511 U.S. at 834, 837. "'[D]eliberate indifference' is a stringent

---

[2]The "standard for dismissal for failure to state a claim is essentially the same under" both Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §1915(e)(2)(B)(ii). Curley v. Perry, 246 F.3d 1278, 1283 (10th Cir.), cert. denied, 534 U.S. 922 (2001).

standard of fault." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). Prison officials cannot be found liable under this standard unless they subjectively knew of and disregarded an excessive risk to the inmate's health or safety by failing to take reasonable measures to abate the risk. Farmer, 511 U.S. at 837, 847. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." Perkin, 165 F.3d at 811. Moreover, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Id. "A delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)(internal quotation and citation omitted).

Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof assert that "[a]ccording to the Special Reports filed in this case ... Plaintiff had constant medical care from the time that he arrived at [CCF] in February 2006." Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof Motion to Dismiss and Brief in Support, at 14. Defendants have not sought summary judgment in this matter. Therefore, the special reports filed herein will not be considered in resolving the Defendants' Rule 12(b)(6) Motion directed to the sufficiency of the Complaint. See Hall, 935 F.2d at 1111 n. 4 ("We will treat a dismissal as proper under Rule 12(b) even when the district court does not exclude materials outside the pleadings if the court does not refer to or rely on the outside materials in its order and if, as a matter of law, the complaint is insufficient."). Moreover, because Defendants' dispositive Motion does not comply with LCvR 56.1(b), the undersigned has not construed the Motion as one seeking

summary judgment.

In Plaintiff's Complaint, Plaintiff asserts that he fractured his left femur in an automobile accident in 1984 and a "rod" was used to repair the broken femur. Plaintiff asserts that he again injured his left hip in 2003 in a fall at a state correctional facility, that an orthopedic specialist recommended surgery and prescribed narcotic pain medication, but that he was discharged in September 2003 and did not undergo the recommended hip surgery prior to being reincarcerated in February 2006.

Plaintiff asserts that in February 2006 he notified CCF medical staff of his hip injury and that he was in "extreme pain" and needed medical attention. Plaintiff asserts that he was examined by Defendant Torbati, who was a physician's assistant at CCF, that Defendant Torbati refused to provide medical treatment or x-ray the injured hip. Plaintiff asserts that he requested medical treatment through a Request to Staff form directed to "Mrs. Suthern, the Health Service Administrator," that x-rays were taken on February 8, 2006, but that on February 24, 2006, he was advised by Defendant Torbati that the x-rays could not be located and would be reordered. Plaintiff alleges that he then filed a grievance directed to CCF Acting Warden Defendant Watkins and that on March 9, 2006, he requested to be seen "by a medical doctor or an ortho [sic] specialist" but Defendants Roof and Torbati refused his request. Plaintiff asserts that on March 19, 2006, Defendants Roof and Torbati refused to provide him a cane to help him walk or any pain medication other than Ibuprofen, which did not relieve his pain due to a "broken hip and a rod protruding out the top of [his] hip." Plaintiff asserts that on March 23, 2006, he was assaulted by another inmate and placed in

the prison's segregation unit, where he was required to get down on the floor and be "cuff[ed] up behind [his] back." Plaintiff asserts he requested that Defendant Roof notify Sgt. Miller of his "medical condition" but Defendant Roof did not do so. Plaintiff alleges that his grievance directed to Defendants Roof and Watkins was denied, and that an appeal of the grievance to Defendant Cotner was denied. Plaintiff alleges that Defendant Cotner advised Plaintiff that "pertinent information from my medical records was obtained and reviewed by an orthopedic consultant at OU Medical Center and he recommended stretching exercises." Plaintiff asserts that he could "barely walk" because of pain, that the pain was "unbarable [sic]," and that he "could barely function from day-to-day." Plaintiff alleges that in July 2006 he submitted a Request to Staff for medical treatment, that he was examined by another physician's assistant, identified as "P.A. Hess," that Hess took x-rays of Plaintiff's hip, ordered "pain shots" every 12 hours, and that on July 31, 2006, Hess "called me back in and injected me with more Toradol pain shots." Plaintiff asserts his hip was x-rayed again on August 1, 2006, by Mr. Huber, and that Mr. Hess and Mr. Huber advised Plaintiff not to put any weight on his left hip, gave him a crutch for walking, prescribed pain shots every 12 hours, and advised Plaintiff he would be undergoing surgery. However, Plaintiff asserts that he was transferred to DCF on August 10, 2006, that following his transfer Dr. Smith x-rayed his hip and ordered him placed in a wheelchair, gave him an extra medical mattress, prescribed three different pain medications and a pain shot once a day to help him sleep, and recommended that he undergo immediate surgery, although the "paperwork" had not been completed at the time he filed the Complaint. Plaintiff has attached to the Complaint copies

of his three Request to Staff forms, his grievance, and the responses to these administrative remedial requests.

Considering the allegations in the Complaint in connection with the documentary evidence attached to the Complaint,[3] Plaintiff's allegations fail to show that any Defendant was deliberately indifferent to Plaintiff's serious medical needs concerning his hip injury. The only Defendants named by Plaintiff in the Complaint who personally participated in his medical treatment are Defendants Roof and Torbati. The documentary evidence attached to the Complaint reflects that these Defendants responded to Plaintiff's requests for medical treatment by taking x-rays of Plaintiff's left hip, prescribing non-narcotic medication to relieve Plaintiff's pain beginning February 6, 2006, sending his medical records to an outside orthopedic specialist for review and treatment recommendations, and reviewing his past inmate medical records. According to the documentary evidence attached to the Complaint, the orthopedic specialist who reviewed Plaintiff's medical records in April 2006 did not recommend surgery to remove the "rod" in Plaintiff's left femur, did not recommend a cane or an orthopedic mattress, and recommended that Plaintiff exercise to maintain flexibility in his hips and legs. There is nothing in Plaintiff's allegations showing that CCF medical staff intentionally interfered with prescribed treatment for Plaintiff's hip injury or were deliberately indifferent to Plaintiff's need for medical treatment for the hip injury.

In Plaintiff's response to Defendants' dispositive Motion, Plaintiff states that he

---

[3]"A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal." Hall, 935 F.2d at 1112.

ultimately underwent surgery on November 14, 2006, to "remove the fractured part of bone that was causing all the pain I was going through." In his responsive pleading, Plaintiff clarifies his allegations in the Complaint by asserting that "from 2-1-06 to 7-18-06, both [Defendant] Roof H.S.A. and P.A. Torbati refused me medical treatment." Plaintiff's Response, at 7. However, the fact that Plaintiff underwent surgery in November 2006 does not show that "from 2-1-06 to 7-18-06" Defendants Roof or Torbati or any named Defendant subjectively knew of and disregarded an excessive risk to the Plaintiff's health. The documentary evidence attached to the Complaint reflects that between February and July 2006 Plaintiff's medical providers were aware that Plaintiff had a serious condition and provided ongoing medical treatment consistent with the treatment recommendations of the reviewing orthopedic consultant. When Plaintiff complained in July 2006 that the non-narcotic pain medication he was receiving was not sufficient to relieve his pain (Plaintiff's Complaint, Ex. K), Plaintiff's medical condition was re-evaluated and additional treatment measures were prescribed, including new x-rays, pain medication injections, and crutches. (Plaintiff's Complaint, Ex. M; Plaintiff's Response, Exs. O, P).

It is obvious that Plaintiff could not prevail on the facts alleged in support of his "deliberate indifference" claim, and allowing him an opportunity to amend the Complaint to restate the claim would be futile. Accordingly, it is recommended that the cause of action be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B).

RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Jones and Cotner's Motion to Dismiss (Doc. # 28) be GRANTED and that the cause of action against these Defendants be DISMISSED with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. It is further recommended that Defendants Ferguson, Kaiser, Peterson, Watkins, and Roof's Motion to Dismiss (Doc. # 38) be GRANTED and that the cause of action against these Defendants be DISMISSED with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Finally, it is recommended that the cause of action be *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) as to Defendant Torbati. Plaintiff is notified that a dismissal of this cause of action pursuant to 28 U.S.C. §1915A(b) or §1915(e)(2)(B) may constitute one "strike" pursuant to 28 U.S.C. §1915(g) upon affirmance or waiver of his opportunity to appeal. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by ___July 17th___, 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

    ENTERED this   27th   day of   June  , 2007.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE